IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DEBORAH LAUFER | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No.: 20-2208 (RBW) |
| | ) | |
| R B PROPERTIES INC., | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

**<u>DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS</u>**

## **TABLE OF CONTENTS**

I.    Introduction ………………………………………………………………………….... 3
II.   Subject Matter Jurisdiction …………………………………………………………… 5
III.  Failure to State a Claim Upon Which Relief May Be Granted ………………………… 14

## **TABLE OF AUTHORITIES**

**Cases**

Allen v. Wright, 468 U.S. 737, 750 (1984)................................................................................. 12
Am. Anti-Vivisection Soc'y v. USDA, 946 F.3d 615 (D.C. Cir. Jan. 10, 2020).......................... 9
Ashcroft v. Iqbal, 556 U.S. 662 (2009)........................................................................................ 4
Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)............................................................................. 15
Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ...................................................................... 4
Equal Rights Ctr. v. Hilton Hotels Corp., 2009 U.S. Dist. LEXIS 126645 (2009) ...................... 12
Friends of Animals v. Jewell, 828 F.3d 989 (D.C. Cir. 2016)...................................................... 11
Havens Realty Corp. v. Coleman, 455 U.S. 363 (1982)............................................... 7, 9, 12
Holt v. Am. City Diner, 2007 U.S. Dist. LEXIS 35284 (D.D.C. 2007) ...................................... 12
Holt v. Am. City Diner, Inc., 2007 U.S. Dist. LEXIS 35284, *12 (D.D.C. 2007) ........................ 12
Houston v. Marod Supermarkets, Inc., 733 F.3d 1323 (11th Cir. 2013) ..................................... 6
Jefferson v. Stinson Morrison Heckler LLP, 249 F. Supp. 3d 76, 80 (D.D.C. 2017).................... 7
Jones v. Horne, 634 F.3d 588, 595 (D.C. Cir. 2011) ................................................................ 15
Kennedy v. Nisha, Inc., 2020 U.S. Dist. LEXIS 170829, *8 (M.D. Fla. Sept. 17, 2020) .............. 6
Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) ......................................................... 13
Lujan v. Defenders of Wildlife, 504 U.S. 555, 578 (1992) ......................................................... 11
Owner-Operator Indep. Drivers Ass'n v. United States DOT, 879 F.3d 339 (D.D.C. Jan. 12,
   2018)........................................................................................................................ 9, 10
Parks v. Richard, 2020 U.S. Dist. LEXIS 86790, *4 (M.D. Fla. May 18, 2020) ........................ 6
Patton Boggs LLP v. Chevron Corp., 683 F.3d 397, 403 (D.C. Cir. 2012)................................. 15
Peart v. Latham & Watkins LLP, 985 F.Supp. 2d 72, 79 (D.D.C. 2013) ...................................... 4
PETA v. USDA, 797 F.3d 1087 (D.C. Cir. 2015) ...................................................................... 10
PGA Tour v. Martin, 532 U.S. 661 (2001) .................................................................................. 7
Price v. City of Ocala, 375 F.Supp. 3d 1264 (M.D. Fla. April 22, 2019)...................................... 6
Spokeo, Inc. v. Robins, 136 S. St. 1540, 1549 (2016) ................................................................ 10

**Statutes**

28 C.F.R. § 36.302(e)....................................................................................................... 3, 5, 14
28 C.F.R. § 36.302(e)(1)(i) ........................................................................................................ 15
28 C.F.R. §36.302(e)(ii)............................................................................................................. 15
28 C.F.R. §36.302(e)(iii)............................................................................................................ 15
28 C.F.R. §36.302(e)(iv)............................................................................................................ 16
28 C.F.R. §36.302(e)(v)............................................................................................................. 16
42 U.S.C. § 12188...................................................................................................................... 7
42 U.S.C. §§ 2000a-3(a) ............................................................................................................ 7

**Rules**

Fed. R. Civ. P. 12 .............................................................................................................................. 3
Fed. R. Civ. P. 12(b)(1) ..................................................................................................................... 3
Fed. R. Civ. P. 12(b)(6) ..................................................................................................................... 4

COMES NOW, Defendant, R B Properties, Inc., by counsel, and in and for its Reply to Plaintiff's Opposition to Motion to Dismiss, states as follows:

I.     Introduction

The Hotel Lombardy is a historic hotel in the Foggy Bottom neighborhood of Washington, DC. As set forth on its website, the Hotel Lombardy was constructed in 1926 and features unique 1920's-era architecture. The hotel was renovated in the 1970s and made sure to maintain its 1920's-era charm while converting to a more classic European-style hotel. The Hotel Lombardy has been a member of the Historic Hotels of America since 2004 and has worked to preserve its historic nature, while striving to include ADA accommodations and features as well.

Plaintiff, a resident of Florida, and self-proclaimed "tester" of third party online hotel room booking websites, has failed to allege any desire to actually stay at the Hotel Lombardy, has failed to allege any legitimate effort to book an accessible room at the Hotel Lombardy, has failed to allege any concrete injury, and has failed to allege sufficient facts in support of her claim that third-party booking sites failed to comply with the requirements of 28 C.F.R. § 36.302(e).

At this stage, Plaintiff cannot attempt to sure the deficient Complaint at issue through and improper affidavit and new factual allegations. Specifically, Plaintiff's affidavit attached to the Opposition to Motion to Dismiss as well as the new allegations set forth in the Opposition to Motion to dismiss are improper and should not be considered. A motion to dismiss pursuant to Fed. R. Civ. P. 12 is strictly limited to the allegations set forth in the Complaint. When evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(1), "the Court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiffs' conclusions." Peart v. Latham & Watkins LLP,

3

985 F.Supp. 2d 72, 79 (D.D.C. 2013) (internal citations omitted). Further, to survive a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is 'plausible on its face.'" See id. (*citing* Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)). However, " a court need not accept as true legal conclusions  set forth in a complaint. See id. at 79-80 (*citing* Ashcroft v. Iqbal, 556 U.S. 662 (2009) further stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Plaintiff's attempt to plead new facts through an affidavit and within the Opposition to Motion to Dismiss is improper and in direct contravention to the Rules of this Court. Plaintiff has made no request for leave to amend the Complaint. Instead, Plaintiff attempts to cure the Complaint's deficiencies with new allegations following Defendant's identification of the Plaintiff's lack of standing and failure to sufficiently state a claim upon which relief may be granted. Plaintiff has narrowly framed the issue in this case: Plaintiff is a tester, who, has no actual intent or desire to stay at the Hotel Lombardy nor does she have any current or future trip planned to Washington DC, never actually attempted to reserve an accessible room, and was never denied a reserved accessible room.

  As an initial matter, Plaintiff has failed to establish subject-matter jurisdiction. Plaintiff does not have standing to bring this action against Defendant, as the owner of the Hotel Lombardy. This Court does not allow tester standing under Title III of the Americans with Disability Act ("ADA") and Plaintiff allegations do not amount to a real and immediate future violation of her rights. Accordingly, this Court does not have subject-matter jurisdiction over this action.

  Additionally, and in the alternative, the Complaint fails to state a claim upon which relief can be granted. The allegations set forth in the Complaint do not support a cause of action for

4

violation of 28 C.F.R. § 36.302(e) in this case. Specifically, the Complaint fails to include facts regarding what information was purportedly missing or provided on the third-party booking sites. The allegations do not include any facts related to identification or description of accessible features at the Hotel Lombardy. Further, the Complaint fails to include any factual support regarding the Hotel Lombardy's purported failure to ensure that accessible rooms are held for disabled individuals nor does it include any factual allegations that Plaintiff was not guaranteed an accessible room held for her use. Plaintiff can escape dismissal through vague, conclusory, and factually devoid allegations. Accordingly, this action should be dismissed with prejudice.

II.     Subject Matter Jurisdiction

This Court has not adopted tester standing for the claims at issue in this case. In order to establish standing in this Court, a plaintiff must allege an injury-in-fact. Plaintiff is a tester-plaintiff, with no actual intent to stay at the Hotel Lombardy, no intent to visit Washington, DC in the near future, or to stay at one of the thousands of hotels in District, and no imminent reason to visit Washington, DC. Additionally, Plaintiff has never attempted to reserve an accessible room at the Hotel Lombardy, and has never been denied a reserved accessible room at the Hotel Lombardy.

As set forth above, Plaintiff cannot cure the deficiencies of her Complaint through an improper affidavit. This Court should not consider the improper affidavit nor the new allegations set forth in the Opposition to Motion to Dismiss. Plaintiff through new allegations and an after-the-fact affidavit cannot change the facts at issue in this case. However, even if proper, the affidavit and the new allegations set forth in Plaintiff's Opposition to Motion to Dismiss are insufficient to save Plaintiff's Complaint. Plaintiff's own admissions fail to establish any

actionable injury and, in fact, confirm that there is no tester standing in this Court for the allegations at issue in this case.

Plaintiff has failed to identify any case law or guidance from this Court that would allow for subject-matter jurisdiction by this Court for this case. Plaintiff primarily relies on case law from Florida, which allows for tester standing in some circumstances. However, this Court has not adopted tester standing in this situation. Further, the Florida Courts have identified the lack of guidance in this area, limited consistency in rulings, and differing opinions of different courts. For instance, the Middle District of Florida Court, explained, "[t]he law in this area is still developing." Kennedy v. Nisha, Inc., 2020 U.S. Dist. LEXIS 170829, *8 (M.D. Fla. Sept. 17, 2020) (internal citation omitted). "ADA website cases are somewhat tricky because courts nationwide are trying to get the square peg of an online injury into the round hold of traditional standing analysis... and there is little authoritative guidance to help district courts." Parks v. Richard, 2020 U.S. Dist. LEXIS 86790, *4 (M.D. Fla. May 18, 2020). Another Florida District Court noted that "courts cannot agree on how to apply traditional Title III case law to website cases. There is disagreement about when a website impedes access to a physical location, or whether a plaintiff must actually visit a "place of public accommodation" to state a claim after having visited a website. And that is to say nothing of the uneven application of the *Houston* factors in Title III website cases. Guidance is sorely needed in this arena. Price v. City of Ocala, 375 F.Supp. 3d 1264 (M.D. Fla. April 22, 2019) (the *Houston* factors include: "(1) the proximity of the defendant's business to the plaintiff's residence; (2) the plaintiff's past patronage of the defendant's business; (3) the definiteness of the plaintiff's plan to return; and (4) the frequency of the plaintiff's travel near the defendant's business. Houston v. Marod Supermarkets, Inc., 733 F.3d 1323 (11th Cir. 2013)).

6

None of the cases cited by Plaintiff, in support of standing in this case, have been cited by or relied upon in this Court. Further, Plaintiff's convoluted statutory interpretation provides little guidance in this case. Under 42 U.S.C. § 12188, "[p]rivate parties bringing suit under Title III of the ADA are limited exclusively to injunctive relief." Jefferson v. Stinson Morrison Heckler LLP, 249 F. Supp. 3d 76, 80 (D.D.C. 2017) (the plaintiff in Jefferson, alleged an ADA Title III violation for failure to provide a computer or tablet for his use during a deposition, however, the Court held that plaintiff did not have standing for such claim). This Court explained that "in an action seeking injunctive relief, such as an action by a private party under Title III of the ADA, see 42 U.S.C. §§ 2000a-3(a), 12188, 'harm in the past . . . is not enough to establish a present controversy, or in terms of standing, an injury in fact,' Thus, when seeking injunctive relief, the plaintiff 'must allege a likelihood of future violations of [his] rights . . . , not simply future effects from his past violations.' Put differently, [b]ecause injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to merely conjectural or hypothetical—threat of future injury.'" Jefferson, 249 F. Supp. 3d at 80-81.

Further, Plaintiff attempt to tie this case to PGA Tour v. Martin, 532 U.S. 661 (2001) is futile. The Court's discussion of Title III's lack client and customer limitation is not applicable to this case. In PGA Tour, the Court's discussion of this issue surrounded its analysis of whether PGA golfers are members of the class protected by Title III of the ADA. 532 U.S. at 678-679. In this case, there is no dispute as to Plaintiff's status as a disabled individual protected by the ADA. The issue in this case surrounds Plaintiff's lack of any actionable injury in fact.

In an effort to establish standing, Plaintiff argues that this case is substantially similar to Havens Realty Corp. v. Coleman, 455 U.S. 363 (1982). However, the facts at issue in this case

7

are distinguishable from those at issue in Havens. In Havens, the Court held that the plaintiffs had standing to bring a claim under the Fair Housing Act of 1968 for racial steering practices by an apartment complex in Richmond, Virginia. There were three individual plaintiffs and one organizational plaintiff in Havens: a renter who attempted to rent an apartment and was falsely told that no units were available; two tester plaintiffs who posed as potential renters to gain information for the suit; and a nonprofit corporation – Housing Opportunities Made Equal. 455 U.S. at 368-396 (only the tester plaintiffs and organizational plaintiff's standing were evaluated by the Court).

The Court, relying on precedent, stated that if "respondents have alleged distinct and palpable injuries that are 'fairly traceable' to petitioner's actions, the Art. III requirement of injury in fact is satisfied." 455 U.S. at 376. The two tester plaintiffs, who were, in fact, Richmond residents, alleged that the "racial steering practices of petitioners [] deprived them of 'the right to the important social, professional, business and economic, political and aesthetic benefits of interracial associations that arise from living in integrated communities free from discriminatory housing practices." Id. at 376. The Court held that "in the absence of further factual development, we cannot say as a matter of law that no injury could be proved." See id. at 377.

The organizational plaintiff in Havens sought only injunctive relief. 455 U.S. at 378. The Court determine that the same standard for an individual's standing must also be applied to an organizational plaintiff. Id. The Court explained that in evaluating standing, it must ask whether "the plaintiff 'alleged such a personal stake in the outcome of the controversy' as to warrant his innovation of federal-court jurisdiction?" Id. at 379. The Court further held that in order to demonstrate injury in fact, it must have alleged a "concrete and demonstrable injury to the

organization's activities… far more than simply a setback to the organization's abstract social interests." Id.

The U.S. Court of Appeals for the District of Columbia Circuit has recently interpreted and applied Havens. *See* Am. Anti-Vivisection Soc'y v. USDA, 946 F.3d 615 (D.C. Cir. Jan. 10, 2020); Owner-Operator Indep. Drivers Ass'n v. United States DOT, 879 F.3d 339 (D.D.C. Jan. 12, 2018). In Am. Anti-Vivisection Soc'y v. USDA, the American Anti-Vivisection Society and the Avian Welfare Coalition sued to compel USDA to issue bird-specific standards or apply the general standards under the Animal Welfare Act to birds. 946 F.3d at 618. The Court explained that in order to have standing a plaintiff must show "an actual or threatened injury in fact that is fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by a favorable court decision." 946 F.3d at 618. Specifically, the Court, interpreting and applying Havens, explained that in order to demonstrate injury, the plaintiffs "must allege a 'concrete and demonstrable injury to the organization's activities' that is 'more than simply a setback to the organization's social interests.'" See id. (The Court in Havens held that the same requirements for standing applied to individuals and organizations). The Court reasoned that because the Avian Welfare Coalition's mission was to protect and raise awareness about captive birds and, in doing so, they used USDA information to pursue their objectives, and USDA's failure to enact regulations regarding birds, forced them to develop their own guidelines, webinars, and informational pamphlets. Id. at 619. The development of such guidelines, webinars, and informational pamphlets were not part of their normal annual expenditures and, in fact, caused a "consequent drain on the organization's resources." Id. (*citing* Havens). The Court further held that because of USDA's inaction regarding creating policies and guidelines applicable to birds, the organization interests were deprived of "key information that it relies on to fulfill its

9

mission." Id. Accordingly, the Court held that because the organization suffered legitimate injuries, which flowed "directly from USDA's failure to issue bird-appropriate standards", they had standing to bring suit. Id. (*citing* PETA v. USDA, 797 F.3d 1087 (D.C. Cir. 2015)).

The Court in Am. Anti-Vivisection Soc'y, did not automatically grant standing; it went through a detailed analysis of alleged injuries suffered because of USDA's failure to issue bird-standards. Unlike the activist group in Am. Anti-Vivisection Soc'y, there are no allegations in this case that Plaintiff has made any unusual and legitimate expenditures due to the purported lack of information provided on the third-party booking sites. Further, in this case, Plaintiff has not taken any legitimate steps to book an accessible room at the Hotel Lombardy, through the third party sites identified in the Complaint. Additionally, Plaintiff has no desire to actually stay at the Hotel Lombardy. Plaintiff's purported injuries are far from "concrete and demonstrable" nor do they amount to any "consequent drain" on her resources.

The Court's holding and analysis in Owner-Operator Indep. Drivers Ass'n v. United States DOT, provides substantive guidance and applies to the facts and issues in dispute in this case as it applies to claims regarding a lack of information and misinformation. 879 F.3d 339 (D.C. Cir. Jan. 12, 2018). In the very first sentence of Owner-Operator Indep. Driver's Ass'n, the Court emphasized "[a]rticle III standing requires a concrete injury even in the context of a statutory violation." 879 F.3d at 340 (*quoting* Spokeo, Inc. v. Robins, 136 S. St. 1540, 1549 (2016)). The appellants in Owner-Operator Indep. Driver's Ass'n were five truck drivers who had inaccurate information regarding their driving record published on the Department of Transportation's Motor Carrier Management Information System, a database of commercial truck driver's safety records. 879 F.3d at 340-341. Two of the truck drivers' inaccurate

information regarding was shared with prospective employers, while the other three drivers' records were never disclosed. Id. 341.

The Court held that the two drivers' whose information was shared had standing to sue; however, the other three drivers did not. 879 F.3d at 345, 347. In reaching its decision, the Court explained that

> Where the alleged injury arises only from a statutory violation… '[a] 'concrete' injury must be '*de facto*'; that is, it must actually exist.' *Id.* Although 'Congress may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law,' this 'does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.' Id. at 342-343 (*citing* Spokeo, Inc. v. Robbins, 136 S. Ct. 1540) (*quoting* Lujan v. Defenders of Wildlife, 504 U.S. 555, 578 (1992)).

When a statutory violation is alleged, Article III standing still requires a concrete injury. Specifically, "[a] plaintiff 'could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.'" Owner-Operator Indep. Driver's Ass'n, 879 F.3d at 342 (*citing* Spokeo, 136 U.S. at 1549).

The Court also explained that the driver's reliance on Friends of Animals v. Jewell, 828 F.3d 989 (D.C. Cir. 2016) was misplaced, which Plaintiff in this case also misconstrues and relies upon. The Court explained that

> The drivers read *Jewell* to support their claim that Congress has broad latitude to define new injuries, but the opinion in that case emphasizes the narrow scope of informational injuries and makes clear that plaintiffs must suffer real harm to support standing. 'A plaintiff suffers sufficiently concrete and particularized informational injury,' we explained, 'where the plaintiff alleges that: (1) it has been deprived of information that, on its interpretation, a statute requires the government or a third party to disclose to it, and (2) it suffers, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure." (citation omitted) *Jewell* is thus of no help to the drivers unless, of course, they can show that the Department's statutory violation injured them.

The Court further reasoned, relying on Havens, that "nothing in the relevant statutory provisions indicat[ed] that Congress 'creat[ed] legal rights' in the database's accuracy, 'the invasion of which creates standing.'" Id. at 345 (*citing* Havens, 455 U.S. at 373).

The Court ultimately held that, "the mere existence of inaccurate information is not sufficient to confer Article III standing" for the drivers' whose information was not disseminated. Id. at 345. The Court further held that, in regard to the drivers' request for injunctive relief, they must have shown that "dissemination of their database information in 'continuing' or 'immien[t].'" However, the driver's admitted that they were no longer at risk of having their information disseminated, thus admitting to their lack of standing for such claims.

In this case, Plaintiff has alleged a purported statutory violation without any concrete injury. Further, the alleged facts at issue in this case do not amount to the type of harm Congress sought to prevent. Simply viewing a third party booking site without any actual desire to stay at the Hotel Lombardy, without any upcoming trip to Washington, DC planned, and without any actual attempt to book an accessible room does not amount to actual injury or harm required to establish standing. Plaintiff's allegations do not satisfy the concrete injury requirement to establish standing under Article III.

It is essential to return to this Court's rulings in Holt v. Am. City Diner, 2007 U.S. Dist. LEXIS 35284 (D.D.C. 2007) and Equal Rights Ctr. v. Hilton Hotels Corp., 2009 U.S. Dist. LEXIS 126645 (2009), which directly address standing under Title III of the ADA. Specifically, "this Court's judicial power is limited to adjudicating actual 'cases' and 'controversies.'" Holt v. Am. City Diner, Inc., 2007 U.S. Dist. LEXIS 35284, *12 (D.D.C. 2007) (*citing* Allen v. Wright, 468 U.S. 737, 750 (1984)). Further, "[i]n order to satisfy the constitutional standing requirements, a plaintiff must establish (1) that he or she has suffered an injury in fact, which is

the invasion of a legally protected interest which is (a) concrete or hypothetical; (2) that there a causal connection between the injury and the conduct at issue, such that the injury is fairly traceable to the challenged act; and (3) that it is likely as opposed to speculative that the injury will be redressed by a favorable decision." Holt, 2007 U.S. Dist. LEXIS at *14 (*citing* Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).

This Court's analysis and opinion in Hilton parallels the issues at play in this case. The first plaintiff in Hilton attempted to reserve an accessible room at the Hilton Oceanfront Resort in Hilton Head, South Carolina, but was informed that the hotel did not have any accessible rooms. 2009 U.S. Dist. LEXIS at *3. The second plaintiff attempted to book an accessible room at a hotel in Pennsylvania through the hotels' online booking system. Id. The third plaintiff, upon arriving to his hotel, was given a non-accessible room. Id. The Court held that *only* the first plaintiff, who was unable to book an accessible room at the Oceanfront Resort due to the hotel's lack of any accessible rooms, and the third plaintiff, who was given a non-accessible room had standing. Id. The Court specifically held that because the first plaintiff explicitly pled that he "has a continuing desire to vacation at the Hilton Oceanfront Resort and would do so but for Hilton Oceanfront Resort's failure to disperse accessible rooms among the available classes of sleeping accommodations," he established standing. Id. at *7-8.

The Court held that the second plaintiff, much like the plaintiff at issue in this case, did not have standing. The second plaintiff's allegations included that: her employer required her to attend quarterly meeting across the country and if her company holds its meeting at a Hilton hotel, she "faces a threat of future injury if she is forced to stay in an inaccessible room because her reservation of an accessible room is not honored." Id. at *9. The Court explained that "[the second plaintiff] does not allege a desire to state at a Hilton hotel, or even that it is likely that she

13

will be compelled to stay at one. And if even if she had so alleged, the possibility that her rights will be violated -- that the Hilton hotel she stays in puts her in a non-accessible room because of ongoing renovations -- is too remote to constitute a "real and immediate" future violation of her rights." Id. at *9-10.

This Court does not allow for tester standing in this case. Plaintiff's argument that she suffered injury from merely viewing the purported third party websites does not create standing. Unlike the first plaintiff in Hilton, Plaintiff in this case has no desire to actually stay at the Hotel Lombardy. Much like the second plaintiff in Hilton, Plaintiff in this case has no actual intent to stay at the Hotel Lombardy and her allegations are far too remote to constitute "real and immediate" future violations of her rights. Essentially, Plaintiff's allegations do not amount to any concrete, real, or particularized injury in any way. In the Opposition to Motion to Dismiss, plaintiff merely argues that she intends to travel to Washington, DC at some unidentified time in the future. This vague intent coupled with Plaintiff's failure to allege any actual desire or effort to stay at the Hotel Lombardy does not establish standing. Specifically, Plaintiff's allegations do not satisfy the injury in fact requirement for standing under Title III of the ADA and the Complaint must be dismissed.

III.     Failure to State a Claim Upon Which Relief May Be Granted

In the Complaint, Plaintiff alleges that she visits websites "for the purposes of review and assessing the accessible features at the Property and ascertain whether they meet the requirements of 28 C.F.R. § 36.302(e) and her accessibility needs." ECF-2, ¶ 10. Plaintiff, without any factual support alleges that she visited six third party online booking websites, without any desire to actually visit or book at room at the Hotel Lombardy, and that each site

"did not identify or allow for reservation of accessible guest rooms and did not provide sufficient information regarding accessibility at the hotel." ECF-2, ¶ 10.

Plaintiff includes no facts or information regarding what accessibility information was available, what information was missing, what information was needed in order to be considered "sufficient," whether any information regarding accessibility was listed, or any fact to support the conclusory allegation that the sites did not identify or allow for reservation of accessible rooms. Plaintiff's Complaint is devoid of any supporting facts. A complaint must "'plead[] factual content that allows the court to draw the reasonable inference that the defendant is labile for the misconduct alleged,' and 'must suggest a plausible scenario that shows that the pleader is entitled to relief.'" Patton Boggs LLP v. Chevron Corp., 683 F.3d 397, 403 (D.C. Cir. 2012) *quoting* Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Jones v. Horne, 634 F.3d 588, 595 (D.C. Cir. 2011)). Specifically, "a court need not accept a plaintiff's *legal* conclusions as true, [], nor must a court presume the veracity of the legal conclusions that are couched as factual allegations." Umude, 107 F. Supp. 3d at 54. The only legitimate and concrete facts provided in the Complaint are the purported dates on which plaintiff visited the sites and the names of the third party sites – the remaining allegations are filled with speculation, conjecture, and are vague, conclusory, and devoid of requisite factual support.

Specifically, Plaintiff has not alleged any facts regarding the hotel's policies, practices, and procedures, as required by 28 C.F.R. § 36.302(e)(1)(i). Plaintiff has failed to allege any facts regarding any identification or description of accessible features, required by 28 C.F.R. §36.302(e)(ii). Further, Plaintiff's Complaint does not include any allegations that support an inference that the hotel does not ensure that accessible rooms are held for disabled individuals, required by 28 C.F.R. §36.302(e)(iii). Plaintiff's Complaint does not include any allegations that

15

Plaintiff actually requested an accessible room, pursuant to 28 C.F.R. §36.302(e)(iv). Lastly, Plaintiff's Complaint fails to include any factual allegations that she was not guaranteed an accessible room was held for her use, as set forth under 28 C.F.R. §36.302(e)(v).

Plaintiff's allegations require this Court to make unreasonable inferences through speculation and guesswork. Plaintiff has not suffered any real, concrete, or actionable injury. The allegations in the Complaint are devoid of the requisite factual support and are filled with conclusory allegations. Accordingly, Plaintiff's Complaint must be dismissed.

Wherefore, for the reasons set forth in the pleadings and any additional argument made at a hearing, Defendant, R B Properties, by counsel, respectfully requests that the Court grant its Motion to Dismiss and dismiss the Complaint with prejudice.

**R B PROPERTIES INC.,**
By Counsel

     /s/ John D. McGavin
John D. McGavin, DCB 475899
BANCROFT, McGAVIN, HORVATH & JUDKINS, P.C.
9990 Fairfax Boulevard, Suite 400
Fairfax, Virginia 22030
Telephone: (703) 385-1000
Facsimile: (703) 385-1555
jmcgavin@bmhjlaw.com
*Counsel for R B Properties Inc.*

**CERTIFICATE OF SERVICE**

     I hereby certify that, on the 23rd day of October, 2020, I caused a true copy of the foregoing to be served by efiling and first class mail, on:

Tristan W. Gillespie
Thomas A. Bacon, P.A.
5150 Cottage Farm Road
Johns Creek, GA 30022
Gillespie.tristan@gmail.com
*Counsel for Deborah Laufer*

                                           /s/ John D. McGavin
                                             John D. McGavin